## INTERSTATE COMMERCE COMMISSION v. SOUTHERN RY. CO.

### (Circuit Court, W. D. Virginia. August 4, 1902.)

1. **CARRIERS—INTERSTATE COMMERCE LAW—RATES FOR LONG AND SHORT HAUL.**

   Competition which is real and substantial, and exercises a potential influence on rates to a particular point, brings into play the dissimilarity of circumstance and condition provided for by section 4 of the interstate commerce act, and may justify a lesser charge for the longer than the shorter haul.

2. **SAME—UNJUST DISCRIMINATION IN RATES.**

   The making of a lesser rate to a more distant and competitive point than is charged to a nearer noncompetitive point is not an unjust discrimination against the nearer point, nor does it give an undue preference to the more distant point, in violation of the interstate commerce act, where such rate is induced by real and substantial competition.

3. **SAME.**

   The fact that a railroad company has acquired the ownership of the only road which previously ·competed with its own for business at a certain point cannot affect the question whether its rates unjustly discriminate against such point in favor of another point where competition exists, where it affirmatively appears that the rates to the noncompetitive point have not been increased since the purchase of the competing road.

4. **SAME—UNREASONABLENESS OF RATES—EVIDENCE.**

   In determining whether the rates charged by a railroad company to and from a city are unjust and unreasonable in themselves, the greatest weight should be given to the following considerations: The opinions of expert witnesses; the effect of the rates charged on the growth and prosperity of the city; the cost of transportation as compared with the rates charged, and the rates in force at numerous other cities, where the circumstances are as nearly similar as may be to those prevailing at such city.

5. **SAME.**

   In determining the effect of the rates charged upon the growth and prosperity of the city, as affecting the question of the reasonableness of such rates, comparison cannot be made alone with another city, where competition has produced unusually low rates, but should be made with other cities where the circumstances and conditions are similar.

6. **SAME—EVIDENCE CONSIDERED.**

   Evidence examined, including new evidence taken since the hearing by the interstate commerce commission, and *held* to overcome the prima.

---

¶ 2. See Carriers, vol. 9, Cent. Dig. §§ 75, 76, 84.

facie case made by the findings of such commission that certain rates charged by the Southern Railway Company to and from Danville, Va., were in themselves unjust and unreasonable.

In Equity. Suit to enforce an order made by the interstate commerce commission.

L. A. Shaver, for complainant.
Ed. Baxter, for defendant.

McDOWELL, District Judge. This case comes up on a bill in equity filed by the interstate commerce commission against the Southern Railway Company to enforce an order made by the commission requiring the defendant to reduce its rates on sundry classes of freight to Danville, Va., and on tobacco shipped from Danville to points in the West. The gravamen of the complaint is the disparity between the rates at Lynchburg and at Danville. There is also complaint as to tobacco rates to the West, because Lynchburg and Richmond have a much less rate than is given Danville. Richmond and Lynchburg are reached by the Southern, the Norfolk & Western, and the Chesapeake & Ohio Railways. Prior to 1886 Danville was reached by four independent railroads. In 1886 three of these roads passed under one control,—that of the Richmond & Danville Railroad Company. In 1894 the Southern Railway Company acquired control of the properties of the Richmond & Danville Company, and in 1899 it purchased the last remaining independent line running to Danville (with the exception of a short, local line which is treated as of no importance), to wit, the Atlantic & Danville road. At Lynchburg (as well as at Richmond) active competition has produced very low rates. From the evidence it appears that the Chesapeake & Ohio, which competes with the "trunk lines," and which complies with the fourth section of the interstate commerce act by charging no more for the short than the long haul, is primarily responsible for these low rates. The rates given Danville are very considerably higher than those given Lynchburg and Richmond. A few instances will show the disparity:

Rates in cents per 100 pounds to Lynchburg and to Danville.

|  | Class 1. | Class 2. | Class 3. |
|---|---|---|---|
| Boston to Lynchburg | 54 | 47 | 38 |
| Boston to Danville | 71 | 63 | 52 |
| New York to Lynchburg | 54 | 47 | 38 |
| New York to Danville | 66 | 58 | 47 |
| Baltimore to Lynchburg | 49 | 42 | 33 |
| Baltimore to Danville | 60 | 52 | 41 |
| Chicago to Lynchburg | 72 | 62 | 47 |
| Chicago to Danville | 108 | 90 | 70 |

|  | Sugar. | Molasses. | Coffee. | Rice. |
|---|---|---|---|---|
| New Orleans to Lynchburg | 32 | 26 | 40 | 32 |
| New Orleans to Danville | 43 | 37 | 51 | 43 |

Tobacco Rates to Louisville.

| | |
|---|---|
| From Richmond | 24 |
| From Lynchburg | 24 |
| From Danville | 40 |

The distance from Norfolk to Danville is one mile less than the distance from Norfolk to Lynchburg. Freight from New Orleans for Lynchburg over the Southern road passes through Danville, as does freight from St. Louis, Chicago, Louisville, and Cincinnati. Tobacco shipped from Lynchburg to Louisville by the Southern road also passes through Danville. But other roads compete for all freight to and from Lynchburg.

In the opinion in East Tennessee, V. & G. Ry. Co. v. Interstate Commerce Commission, it is said:

"The only principle by which it is possible to enforce the whole statute is the construction adopted by the previous opinions of this court; that is, that competition which is real and substantial, and exercises a potential influence on rates to a particular point, brings into play the dissimilarity of circumstance and condition provided by the statute, and justifies the lesser charge to the more distant and competitive point than to the nearer and non-competitive place, and that this right is not destroyed by the mere fact that incidentally the lesser charge to the competitive point may seemingly give a preference to that point, and the greater rate to the noncompetitive point may apparently engender a discrimination against it. We say 'seemingly' on the one hand and 'apparently' on the other, because in the supposed cases the preference is not 'undue,' or the discrimination 'unjust.' This is clearly so when it is considered that the lesser charge, upon which both the assumption of preference and discrimination is predicated, is sanctioned by the statute, which causes the competition to give rise to the right to make such lesser charge." East Tennessee, V. & G. Ry. v. Interstate Commerce Commission, 181 U. S. 18, 21 Sup. Ct. 516, 45 L. Ed. 719.

The evidence in this case leaves no room for doubt that the competition at Lynchburg (as well as at Richmond) is real and substantial; that it comes about mainly, if not entirely, from conditions not within the control of the defendant; and that there is a modicum of profit to the defendant in transporting freight to and from Lynchburg and Richmond. It follows that in reaching a conclusion in this case adverse to the defendant the rates to and from Danville must be held unreasonable in and of themselves. If reasonable, they cannot be held to subject Danville to an undue prejudice, or to give Lynchburg an undue preference, merely because the Lynchburg rates are considerably lower.

A strong argument is made by counsel for complainant, based on the proposition that the defendant, in purchasing the Atlantic & Danville road in 1899, violated the "Anti-Trust Act" (26 Stat. 209), and consequently seeks to take advantage of its own wrong in treating Danville as a noncompetitive point. In applying the doctrine here invoked, I am met with the evidence that the rates now are no higher than they were when the Southern and the Atlantic & Danville were independent and competing roads. The evidence is that, while there was competition in soliciting business between the two companies, this competition did not reduce the rates. The fact that the Danville rates were as low as the Lynchburg and Richmond rates prior to 1886 does not affect the question. This was prior to the passage of the anti-trust act, and prior to the reduction in rates by the Norfolk & Western and Chesapeake & Ohio. The wrong, therefore, that is charged to the defendant is the purchase of the Atlantic & Danville road. But as the rates are as low now as they were at the time of the purchase,

it does not appear that the defendant has taken any inequitable advantage of the purchase. Whether or not the Danville rates are reasonable per se is a question that has given me no small amount of trouble. That the cost of transporting freight by wagons is not a proper test is very clear. The rates at Lynchburg cannot be alone used as a basis of comparison. The criteria to which I think the greatest weight should be given are as follows: The opinions of expert witnesses; the effect of the present rates on the growth and prosperity of Danville; the cost of transportation as compared with the rates charged; and the rates in force at numerous other cities, where the circumstances are as nearly similar as may be to those prevailing at Danville. Numerous business men, citizens of Danville, who have, perhaps, sufficient knowledge of the subject to give opinion evidence, testify that the Danville rates are unreasonably high. On the other hand, a great number of railroad traffic officials of large experience and high position testify that the rates are reasonable. Both sets of witnesses are charged with bias, and it is probable that they are all of them, unconsciously, biased in favor of the side calling them. On the whole the weight of the opinion testimony is, I think, with the defendant; but, so far as these mere opinions go, I am unable to reach a conclusion. The effect of the present rates on the growth and prosperity of Danville is worthy of careful consideration. Many Danville citizens testify that the town has not prospered as it should have done because of the high freight rates charged by the defendant. But these witnesses, consciously or unconsciously, are, I think, contrasting Danville with Lynchburg. A low freight rate is an important factor in the prosperity of cities. But the prosperity enjoyed by Lynchburg as a result of low rates cannot properly be used as a basis of comparison. Before it can be said absolutely that Danville has not prospered as it should have done, it must appear that comparisons are made, not with points where competition has produced unusually low rates, but with cities where the circumstances are similar to those existing at Danville. The evidence is that one or more industries were deterred from moving to Danville because of the high rates. But here again we are confronted with the same difficulty. Did not the proposing manufacturers contrast the Danville rates with those prevailing at some place or places where competition has brought about very low rates? If this is true,—and the impression left on my mind is that it is,—this evidence cannot be treated as of much weight. It is a further fact that the very low rates given Lynchburg have enabled her merchants to drive the Danville merchants out of territory nearer to Danville than to Lynchburg. But does this fact enable us to say that the Danville rates are inherently unreasonable? If I correctly understand the purport of the supreme court decisions, the rates given Lynchburg—being the result of substantial competition, and affording the defendant some profit—are not unlawfully low. Therefore the necessary consequence of the disparity in the rates respectively given Lynchburg and Danville cannot be conclusive of the question before us. If the testimony for the complainant had shown that Danville had not prospered as it should have done, or that its trade territory had been reduced, in comparison with other cities where competition

had not produced unusually low rates, and where the circumstances are otherwise similar to those at Danville, it would be proper to conclude from such testimony that the Danville rates are too high. But such testimony was not offered. In this connection an argument suggested by one of the witnesses for the defendant, which is of much force, may be mentioned: It is difficult to conceive of any interest that the defendant could have to unduly prefer Lynchburg and oppress Danville, for the defendant has practically the whole of the transportation to and from Danville, and only a proportion of that to and from Lynchburg. The next test to be applied is to compare the cost of transportation with the earnings derived therefrom; or, in other words, to learn if the defendant is earning from this transportation an unusually large profit. But, unfortunately for present purposes, the business of a large railroad system is so complicated that very little assistance can be had from this method when applied to a small portion of its whole business. If we consider the income derived from the whole system of the Southern Railway Company, there is no doubt left by the evidence that its earnings are rather less than a fair return. The evidence is that it would cost nearer fifty than forty thousand dollars per mile of road to duplicate or reproduce the road, terminals, and equipment of the company, considering the cost of acquiring what may be called the good will of its patrons. And the net annual income of the road is about 4 per cent. on the lesser sum. The cost of transporting freight to and from Danville, considered separately, could not, I imagine, be arrived at with any very great accuracy. At any rate, no sufficient data are given on this point, and from the evidence I am wholly unable to reach any satisfactory conclusion based on the test of income.

The inconclusive and unsatisfactory results, and the inherent difficulties in applying the above-mentioned tests, have led me to the conclusion that the most satisfactory test to be applied in this case is to compare the Danville rates with those in force at numerous other cities and towns in the South, where the circumstances are as nearly as may be similar to those at Danville. This has been done by numerous witnesses for the defense. The rates to and from a great number of towns and cities in the South—some larger and some smaller, some of more and some of less commercial importance, than Danville; some inland and some having water as well as rail transportation; some being on only one railroad and some having more than one road—have been shown. The result of comparisons between these rates and the Danville rates is the conclusion that the latter compare favorably with the former. It may be said that the rates used for comparison are themselves unreasonably high. But the expert witnesses for the defense—who alone testify on the point—are of opinion that they are not; and, if it be true that they are unreasonably high, evidence to this effect should have been introduced by the complainant. Again, it may be true that there are many cities in the South that are fairly to be compared with Danville, the rates at which are much lower than the Danville rates. But, if so, no evidence to this effect has been introduced. It may further be true that the expert witnesses introduced for the

defense are biased. In fact, I incline to the opinion that they, probably unconsciously, are, and I therefore give less weight to their opinions than I would if they were entirely free from bias. But when they state facts—for instance, that a particular city is larger, and commercially more important, than Danville; that it has competing carriers; and that its rates are higher than the Danville rates —which are not controverted, I am not at liberty to disregard their testimony. As judged, then, by this last test, I am led to the conclusion that the Danville rates are not unreasonably high. In reaching this conclusion I have not overlooked the findings of fact of the commission, which are prima facie evidence; nor have I lost sight of the high value to be given its opinion. But a mass of evidence has been taken since the hearings before the commission, which was not, of course, considered by the commission, and which has made out a vastly stronger case for the defendant than it had at the former hearings.

As the other tests of the reasonableness of the Danville rates are inconclusive and unsatisfactory, and as a comparison with rates given other cities, where the conditions are to some extent similar to those at Danville, lead to the conclusion that the Danville rates are "in and of themselves" reasonable, it follows that the bill should be dismissed, with costs.